UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

YASKAWA AMERICA, INC.
MOTOMAN ROBOTICS DIVISION,

       Plaintiff,

-v-

INTELLIGENT MACHINE SOLUTIONS,
INC.,

       Defendant.

Case No. 3:14-cv-084

Judge Thomas M. Rose

_____

**ENTRY AND ORDER GRANTING IMS'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS (Doc. #9) AND OVERRULING MOTOMAN'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT (Doc. #13)**

_____

The complaint in this matter is brought by Plaintiff Yaskawa America, Inc. Motoman Robotics Division ("Motoman") against Defendant Intelligent Machine Solutions, Inc. ("iMS"). Motoman's Complaint was filed in the Court of Common Pleas of Montgomery County, Ohio, on February 13, 2013. The Complaint was amended on February 18, 2014. The Amended Complaint was then removed to this Court on March 13, 2014, based upon this Court having diversity subject matter jurisdiction.

Motoman brings seven (7) claims in the Amended Complaint. (Doc. #4.) Count I is for breach of second contract. Count II is for breach of implied warranties of merchantability - second contract. Count III is for breach of implied warranty of fitness for a particular purpose - second contract. Count IV is for defective manufacture or construction in violation of Ohio Rev. Code § 2307.74. Count V is for defective design in violation of Ohio Rev. Code § 2307.75. Count VI is for defect due to nonconformance with manufacturers' representation in violation of

Ohio Rev. Code § 2307.77, and Count VII is for negligence.

Now before the Court is a Motion for Partial Judgment On the Pleadings ("MJOP") (doc. #9) brought by iMS and a Motion for Leave To File a Second Amended Complaint ("Motion To Amend") (doc. #13) brought by Motoman. Both are fully briefed and ripe for decision. A relevant factual background will first be set forth followed by the applicable legal standard and an analysis of iMS's MJOP and an analysis of Motoman's Motion To Amend.

## FACTUAL BACKGROUND

In the context of a motion for judgment on the pleadings, the Court must accept as true all of the factual allegations contained in the complaint, or in this case, the Amended Complaint. The Court may also consider court decisions and other public records. Motoman's Amended Complaint makes the following relevant factual allegations:

Motoman is a manufacturer and developer of automation products and solutions. (Am. Compl. ¶ 5.) It is an Illinois for-profit corporation with its principle place of business in Ohio in Miamisburg, Ohio. (Id. at ¶ 1.)

IMS is a designer, manufacturer and supplier of machined metal rail/track products on which robots can travel or move while performing defined tasks. (Id. at ¶ 6.) It is a Michigan for-profit corporation with its principle place of business located at Norton Shores, Michigan. (Id. at ¶ 2.)

In July of 2011, the Toyota Corporation ("Toyota") engaged Motoman to develop an automation and robotic solution to assist with the assembly and handling of transmissions (the "Toyota Transmission Robot") at Toyota's manufacturing and assembly plant in Buffalo, West Virginia. (Id. at ¶ 8.) Motoman contracted with iMS to assist in manufacturing the carriage

transport system upon which the Toyota Transmission Robot would travel while performing its programmed operations (the "First Contract"). (Id. at ¶¶ 9-16.) The First Contract was performed and satisfied and is not the subject of Motoman's Amended Complaint. (See Id. at ¶ 17.)

In the fall/winter of 2012, Toyota requested Motoman to develop an automation and robotic solution identical to the Toyota Transmission Robot but capable of traveling at higher speeds. Motoman again contacted iMS to facilitate the design and production of this new system. (Id. at ¶ 19.)

IMS represented to Motoman that, rather than manufacture a new carriage transport system, the existing iMS carriage transport system could handle the higher speeds with the addition of new components manufactured by iMS and some minor modifications of the existing carriage transport system. (Id. at ¶ 20.) Motoman then contracted with iMS to provide the new components and make the modifications to the existing system (the "Second Contract"). (Id. at ¶¶ 21-27.) Motoman fully paid for the new components and modifications. (Id. at 28.)

The new carriage transport system suffered and continues to suffer multiple catastrophic system failures such that the Toyota Transmission Robot has been out of service for extended periods of time. Further, the original carriage transport system has required, and may continue to require, significant repairs to correct iMS's alleged poor workmanship. (Id. at ¶ 31.)

IMS has refused to remedy the carriage transport system failures. (Id. at ¶ 32.) As a result, Motoman has allegedly incurred, and continues to incur, damages associated with its evaluation of the carriage transport system failures and the costs associated with repairing and/or replacing the failed carriage transport system. (Id. at ¶ 33.) Also as a result, the lawsuit that is now before the Court, was filed.

### APPLICABLE LEGAL STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(c)

IMS has moved for partial judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). "The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010)(citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001)).

To avoid dismissal pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is not like a probability requirement. *Id.* The plausibility standard seeks more than a possibility that a defendant has acted unlawfully. *Id.* Where a complaint does not permit a court to infer more than the mere possibility of misconduct, the complaint has not shown that the complainant is entitled to relief. *Id.* at 679.

When considering a 12(c) motion, all well-pleaded material allegations of the pleadings of the opposing party are taken as true. *Fritz*, 592 F.3d at 722. Also, the well-pleaded material allegations are construed in a light most favorable to the opposing party. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). However, legal conclusions are not accepted as true nor are recitations of the elements of a cause of action. *Fritz*, 592 F.3d at 722. The Rule 12(c) motion is granted only if the moving party is nevertheless clearly entitled to judgment as a matter of law. *Id.*

### ANALYSIS OF MJOP

IMS has moved for partial judgment on the pleadings seeking dismissal of Counts IV, V,

-4-

VI and VII of Motoman's Amended Complaint. The basis for the dismissal of these Counts of Motoman's Amended Complaint, according to iMS, is that the law does not allow a commercial customer to maintain claims of negligence and strict/product liability where solely economic damages are alleged. Motoman responds that the "economic loss doctrine" does not require the dismissal of these Counts because it has made allegations of other property damage caused by iMS's negligence and by iMS's defective design and component products.  Motoman does not argue that Counts IV, V, VI and VII do not sound in negligence and strict/product liability (tort). Thus, the resolution of this matter turns on whether Motoman is seeking only economic damages.

## The Economic Loss Doctrine

The economic loss doctrine "prohibits purchasers of products from recovering purely economic damages under most tort theories." *HDM Flugservice GMBH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1028 (6th Cir. 2003). However, the doctrine does not prevent recovery for damage to property other than the defective product. *Id.* at 1030. Finally, if the parties have a contractual relationship, they may not sue in strict liability or implied warranty for their economic damages, but instead must rely on the Uniform Commercial Code's ("U.C.C.") contractual remedies." *Id.* at 1029.

The Court next turns to the Ohio Supreme Court[1] to determine what are economic

---

[1] The Parties do not argue that the law of a state other than Ohio is specifically implicated here. Thus, as a federal court located in Ohio exercising diversity jurisdiction, this Court must apply Ohio substantive law. *Hisrich v. Volvo Cars of N. America*, *Inc.*, 226 F.3d 445, 449 (6th Cir. 2000). This Court must apply the substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the state.'" *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001)(quoting *Pedigo, M.D. v. UNUM Life Ins. Co. of America*, 145 F.3d 804, 808 (6th Cir. 1998)).

damages. "Generally speaking, a defective product can cause three types of injury: personal injury, property damage, and economic loss." *Chemtrol Adhesives, Inc. v. American Manufacturers Mutual Insurance Company*, 537 N.E.2d 624, 629 (Ohio 1989). Personal injury is self-explanatory and is not alleged in this case. *Id.* Property damage is generally damage to the defective product itself or damage to other property. Economic loss (damage) may be either direct or indirect. *Id.* Direct economic damage includes the loss attributable to the decreased value of the product itself. *Id.* Indirect economic damage includes the consequential losses sustained by the purchaser of the defective product. *Id.*

Examples of economic damages are additional expenses incurred because the product did not perform as expected. *Id.* at 631. Also, consequential expenses are generally economic damages. *Id.* at 629. Economic damages typically includes the cost of repair or replacement of the defective product. *Id.* However, a product's self-inflicted damage is generally considered property damages, except, where the buyer and seller are in privity of contract, the product's self-inflicted damage is considered economic damage. *Id.* at 630-31.

**Motoman's Pleadings**

For the purposes of this MJOP, Motoman and iMS were in privity, that is, they had entered into the Second Contract. Also, Motoman pleads in its Amended Complaint that:

> 31. As a direct result of IMS' failed design, manufacturing and installation of the <u>new</u> carriage transport system components and modifications contemplated by the Second Contract, the <u>original</u> carriage transport system contemplated by the First Contract has required, and may continue to require, significant repairs to correct the poor workmanship of IMS under the Second Contract.

(Am. Compl. ¶ 31) (emphasis added.)

### Analysis of Motoman's Pleadings

IMS wants the Court to consider the damage to the original carriage transport system to have been done by an alleged defective component. Thus, there was no alleged property damage i.e. damage to another product. This argument is based upon the Sixth Circuit's determination in *Flugservice* that damage to the integrated product by an alleged defective component is not "other property damage." *Flugservice*, 332 F.3d at 1030-31. Said another way, if the purchaser of a product were allowed to sue component manufacturers for the damage due to the integrated product, the purchaser would be able to circumvent the economic loss rule by recovering in tort instead of being limited to contract remedies. *Id.* at 1031.

Motoman wants the Court to consider the damage to the original carriage transport system to have been done by the allegedly defective contract design and components provided under the Second Contract. In other words, Motoman argues that what it considers to be the "new carriage transport system" damaged the "original transport system."

Motoman elected to purchase new carriage transport system components and to contract with iMS for minor modifications to the current carriage transport system. IMS then completed the installation of the new carriage transport system components and the installation of the modifications. (Am. Compl. ¶ 27.)

The Court reasons that there is no longer an "original" carriage transport system. According to the pleadings, the "original" carriage transport system has been modified by the addition of new components and by the modification of existing components. Further, if there is no "original" carriage transport system, then the "original" carriage transport system cannot now

be damaged. Thus, any damages must be, based upon a reading of the Amended Complaint, to the new carriage transport system and must, therefore, be economic damages. As a result, since Motoman cannot sue iMS, with whom it is in privity, in tort for economic damages, all of Motoman's tort claims must fail.

The Parties do not dispute that Counts IV, V, VI and VII of Motoman's Amended Complaint sound in tort. Therefore, they must be dismissed.

IMS's Motion for Partial Judgment On the Pleadings (doc. #9) is GRANTED. Counts I, II and III of Motoman's Amended Complaint remain to be adjudicated.

## ANALYSIS OF MOTION TO AMEND

Motoman seeks to amend its Amended Complaint (doc. #13) to allege additional technical details regarding the damage incurred by it. The proposed additional factual allegations include facts that were, according to Motoman, only recently discovered. The additions proposed by Motoman detail alleged damages to the original carriage transport system done by the defective iMS Second Contract design and components. The additions also assert that the original carriage transport system is a complete loss and will now require replacement.

IMS has opposed Motoman's Motion To Amend. (Doc. #15) IMS argues that the proposed amendments do not correct legal deficiencies that it has raised and it will be prejudiced if it has to again answer and file another motion addressing the same issues as it addressed in its MJOP.

Based upon the reasons more fully stated above, there is no longer an "original" carriage transport system. Thus, any damages must be, based upon a reading of the Amended Complaint, to the new carriage transport system or a result of the new carriage transport system and must,

therefore, be economic damages. Therefore, Motoman's proposed Second Amended Complaint would be futile. Thus, Motoman's Motion To Amend (doc. #13) is OVERRULED.

**DONE** and **ORDERED** in Dayton, Ohio this Fourteenth Day of July, 2014.

**s/Thomas M. Rose**

————————————————
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record